ANCHOR CASUALTY COMPANY v. BONGARDS CO-OPERATIVE CREAMERY ASSOCIATION AND OTHERS.

91 N. W. (2d) 122.

June 27, 1958—No. 37,422.

*Daniel F. Foley,* for appellant.

*O. S. Vesta,* for respondent Bongards.

*Miles Lord,* Attorney General, and *John F. Casey, Jr.,* Special Assistant Attorney General, for respondent commissioner.

MURPHY, JUSTICE.

This is an appeal by Anchor Casualty Company from an order of the District Court of Ramsey County discharging a writ of certiorari issued on its application.

The respondent Walter H. Pearson, doing business as Pearson Produce Company, executed a bond as required by the Wholesale Produce Dealers Act, M. S. A. c. 27, in the penal sum of $7,500. It was approved by the commissioner of agriculture and conditioned upon the faithful performance of his duties as a wholesale produce dealer and "payment, when due, of the purchase price of all produce purchased * * *." Anchor Casualty Company was the surety on the bond.

In February 1953 Pearson purchased from respondent Bongards Creamery Association produce valued in excess of $35,000. When Pearson failed to pay this account, on March 5, 1953, Bongards instituted an action against him in the District Court of Hennepin County. Under the provisions of § 27.04, in order to secure indemnification from the bonding company, Bongards as a creditor was required to submit to the commissioner of agriculture its claim against the produce dealer within 30 days from the date the obligation became due. It appears from the record that the reason Bongards instituted action in district court before it filed its claim with the commissioner was that it had acquired information to the effect that Pearson was in the process of transferring his assets in fraud of creditors. To protect itself in face of this development, Bongards had not only instituted action in district court but filed its claim with the commissioner on March 11, 1953, as a creditor entitled to indemnification under the terms of the bond.

On July 27, 1953, the parties to the proceedings before the com-

missioner agreed by stipulation to postpone final adjudication until after the termination of the district court action. In the meantime Pearson had filed an answer in Bongards' action in district court admitting liability for the sale of the produce but entering counterclaims for over $117,000. It appears from the record that in this action a judgment was entered in favor of Bongards and against Pearson for $40,202.26; Pearson's counterclaims were dismissed; and the question of the alleged fraudulent transfer of assets was reserved.

Pursuant to the stipulation of July 27, 1953, the matter came on for hearing before the commissioner of agriculture on March 5, 1956. The commissioner, who was represented by a deputy, proceeded with the hearing without the aid or advice of a representative of the attorney general's office. As a result of this hearing, the deputy commissioner on July 11, 1956, made findings of fact and an order denying Bongards' claim. Apparently the deputy commissioner was persuaded by the argument of the bonding company to the effect that, when Bongards instituted action in district court against Pearson without notifying the commissioner of agriculture, it waived or surrendered any rights it may have had against the surety under § 27.04.

After the commissioner's order had been made, Bongards on August 30, 1956, noticed a motion to amend the findings, which motion was to be heard September 7, 1956. It appears that the commissioner on August 30, 1956, made an order vacating the order denying the claim and set a hearing for the taking of additional evidence in the matter for September 7, 1956, as indicated by Bongards' notice of motion. The Anchor Casualty Company, taking the position that the commissioner had no right to vacate or review the order of July 11, 1956, promptly applied for certiorari. At the hearing on September 7, 1956, the commissioner continued the matter until the writ should be disposed of. It is still pending.

█ The question as to whether the creditor, by instituting an action in district court without notifying the commissioner of agriculture, waived or surrendered its rights against the surety is not before us for review. The only question presented by the record is whether the commissioner of agriculture may set aside his order entered pursuant to § 27.06 when he is in doubt as to the correctness of that order, and

reopen the proceedings for the purpose of reconsidering and taking additional evidence under circumstances where such action to review is taken by the commissioner promptly before the rights of the parties to the proceedings have been prejudiced.

The authorities on this question are divided. There is considerable authority to the effect that an administrative tribunal in the absence of statute has no power to reconsider, grant a rehearing, or set aside its final determination. On the contrary there are authorities which hold that, even in the absence of a specific grant of authority by the statute to reconsider or modify determinations, administrative tribunals have the right to rehear and reconsider a cause for the purpose of correcting any injustice, on the theory that such agencies have inherent or implied power comparable to that possessed by the courts to rehear or reopen and reconsider its actions or determinations where the proceeding is in essence a judicial one. Numerous authorities supporting both points of view are gathered in 42 Am. Jur., Public Administrative Law, §§ 173 to 178, inclusive, and 73 C. J. S., Public Administrative Bodies and Procedure, § 156.[1] The view in support of the petitioner's

[1]The appellant in a supplemental brief submits the following authorities:

"FESTLER VS WALLACH, 245 MINN. 222, at Pages 227 and 288.

"MORGAN VS UNITED STATES, 304 U. S. 1, every line and on every page.

"ZEGLIM VS YOST, 163 MINN. 264, at Page 266.

"ROCKNE VS OLSON, 191 MINN. 310, at Page 313.

"ROSENQUIST VS O'NEILL & PETERSON, 187 MINN. 375, at Page 376.

"JOHNSON VS JEFFERSON, 191 MINN. 631, at Page 632.

"BARLEAU VS MINNEAPOLIS, 214 MINN. 564, at Page 572.

"JUSTER BROTHERS VS CHRISTGAU, 214 MINN. 108, at Pages 114, 118, 119, 120 and 121.

"STATE EX REL SPURCK VS CIVIL SERVICE BOARD, 226 MINN. 240 at Page 251.

"STATE EX REL SPURCK VS CIVIL SERVICE BOARD, 226 MINN. 253 at Page 259. 'Lack of statutory power betokens lack of jurisdiction.'

"42 AMERICAN JURIS: 'Public Administrative Law', Sections 39 and 174.

"MOORE VS ROBBINS, 96 U. S. 530.

"BUTTE A & P RAILROAD VS UNITED STATES, 290 U. S. 127, at Pages 137 and 138.

"WEST VS STANDARD OIL, 278 U. S. 200 at Page 220.

"SURYON VS ALASKA INDUSTRIAL BOARD, 12 ALASKA 571."

position is set forth in Suryan v. Alaska Industrial Board, 12 Alaska 571, 573, where the court said: "* * * an administrative body has no power to grant a rehearing or to set aside or modify its decisions except by virtue of express statutory provision or by necessary implication." The principal reason given for this holding is that: "There must be an end to litigation. * * * Hence, a claim denied today could be reopened at any indefinite future time. It is inconceivable that such a power would be granted even by express statutory provision."

While it is true that the statute in question, § 27.06, does not specifically grant to the commissioner the power to open and rehear matters, neither does it deny that power to him. The statute provides that the creditor may file a claim against the delinquent produce dealer with the commissioner, who "shall investigate the charges made and, at his discretion, order a hearing before him, giving the party complained of notice of the filing of the complaint and the time and place of the hearing." The statute provides that the commissioner shall report his findings and render his conclusions and order to the parties, who shall have 15 days following in which to comply with the commissioner's order. The statute further provides that if the order is not complied with "either party, if aggrieved by any condition of the bond," within 30 days may maintain an action against the principal and sureties. The statute contains this important condition: "* * * no action against the bondsmen of a licensee shall in any instance be maintained without the prior written approval of the commissioner, * * *." It is apparent from the foregoing that the complaint of the creditor before the commissioner and the investigation and hearing on his complaint is for the purpose of securing consent to sue the surety. The effect of the commissioner's order is not a final determination of the surety's liability. The commissioner merely determines that the debt is one which comes within the scope of the surety's undertaking, and that determination is a condition precedent to the right of the creditor to sue the surety. The liability of the surety is determined by the district court as in any civil action.

The purpose of the produce act was discussed in Bozied v. Edgerton, 239 Minn. 227, 230, 58 N. W. (2d) 313, 315, where we said:

"* * * The wholesale produce dealers act, which applies to all rela-

tionships between wholesale dealers and their customers, is, in the light of its terms as a whole and as recognized by administrative interpretation of long standing, for the protection of every person selling certain farm products to a licensed wholesale dealer. Specifically, the purpose of the act is to protect the producers of farm products by assuring to them a financially reliable market. * * *

"As a remedial act, § 27.04 should be construed liberally to accomplish its protective purpose."

As we view the act, it should be construed so as to give effect to the objects which the legislature sought to accomplish and not to deny to creditors the beneficial purposes of the act. It is generally recognized that one of the powers proper to an efficient and just administration of the right to adjudicate is the power to reverse adjudications which appear to be erroneous (Federal Rules of Civil Procedure, Rule 60[b]). This power lasts until jurisdiction is lost by appeal or certiorari or until a reasonable time has run, which would be at least coextensive with the time required by statute for review.[2]

Where through fraud, mistake, or misconception of facts the commissioner enters an order which he promptly recognizes may be in error, there is no good reason why, on discovering the error, he should not, after due and prompt notice to the interested parties, correct it. We think the better view on this question is set forth in Handlon v. Town of Belleville, 4 N. J. 99, 106, 71 A. (2d) 624, 627, 16 A. L. R. (2d) 1118, which stated:

"* * * Barring statutory regulation, the power may be invoked by administrative agencies to serve the ends of essential justice and the policy of the law. But there must be reasonable diligence. The denial to such tribunals of the authority to correct error and injustice and to revise its judgments for good and sufficient cause would run counter to the public interest. The function cannot be denied except by legislative fiat; and there is none such here. The power of correction and revision, the better to serve the statutory policy, is of the very nature of such governmental agencies. It involves the exercise of a sound discretion,

[2]M. S. A. 27.06 and 606.01.

controlled by the statutory considerations and the dictates of justice; the action taken must rest on reasonable grounds and be in no sense arbitrary."

See, also, Air-Way Branches, Inc. v. Board of Review, 10 N. J. 609, 614, 92 A. (2d) 771, 773.

Here there is no claim made that the bonding company has been prejudiced by the commissioner's decision to rehear the matter. The only effect of the order is to reopen the matter for the taking of additional testimony to determine the merits of the creditor's claim that he should be permitted to assert against the bonding company a part of the loss which he sustained. As we interpret § 27.06, we do not think the time has passed beyond which the commissioner could no longer reconsider his decision. We think the commissioner had the power to reopen the matter as he did.

Affirmed.