**In the Matter of the Class A License Application of NORTH METRO HARNESS, INC.**

No. A05–471.

Court of Appeals of Minnesota.

March 28, 2006.

Byron E. Starns, Timothy J. Keane, James A. Stein, Leonard, Street & Deinard, P.A., Minneapolis, MN, for relator Columbus Concerned Citizens, Inc.

Mike Hatch, Attorney General, Darren DeJong, Assistant Attorney General, Kenneth Raschke, Assistant Attorney General, St. Paul, MN, for respondent Minnesota Racing Commission.

John E. Drawz, Jay Quam, Mollie M. Smith, Fredrikson & Byron, P.A., Minneapolis, MN, for respondent North Metro Harness, Inc.

Considered and Decided by WRIGHT, Presiding Judge; WILLIS, Judge; and WORKE, Judge.

## OPINION

WORKE, Judge.

Following respondent the Minnesota Racing Commission's vote to deny respondent North Metro Harness, Inc.'s application for a Class A racetrack license, commissioners received new information outside of the record that settled concerns underlying the application denial. The commission sua sponte moved to reconsider its decision, and after reopening the record to receive new information, granted the application. On this appeal, relator Columbus Concerned Citizens, Inc. argues that the commission did not have authority or jurisdiction to sua sponte move to reconsider its decision, that the commission denied relator due process of law, and that the record lacks substantial evidence to support the commission's decision to grant the application. While sua sponte moving to reconsider based on conversations outside of the record is generally not a preferred manner in which to request reconsideration, without a statute or rule proscribing such action, a commission, in a quasi-judicial proceeding, has inherent authority to sua sponte move to reconsider a decision when the time for appeal has not expired. Because the commission has inherent authority to reconsider its decision, because the commission did not violate relator's right to due process of law, and because there is substantial evidence in the record

to support approval of the license, we affirm.

## FACTS

On December 23, 2003, North Metro Harness Inc. (North Metro) submitted an application for a Class A license for the North Metro Harness Racetrack to the Minnesota Racing Commission (commission). The application sought to establish the facility in Columbus Township in Anoka County. Relator Columbus Concerned Citizens, Inc. organized to oppose the facility. The commission conducted an investigation into North Metro's qualifications as required under Minn.Stat. § 240.06 (2004). The commission conducted two public hearings at which testimony was taken from interested individuals. The hearings were conducted according to the commission's bylaws that require business to be conducted according to Robert's Rules of Order.[1]

On October 21, 2004, the commission voted five to three to deny the application. On November 15, 2004, the commission issued an order formally denying the application. Concerns underlying the denial were inadequate road access and transportation, inadequate horse stalls and human accommodations, resident opposition, and the creation of competition adversely affecting Canterbury Park, Minnesota's thoroughbred racetrack. Following the October 21 vote, North Metro provided new information to commissioners regarding a plan negotiated between North Metro and the Horsemen's Benevolent & Protective Association (HBPA), which initially opposed the license, to supplement purse awards at Canterbury Park. This information settled commissioners' concerns regarding competition. On November 17, 2004, at the commission's next regularly scheduled meeting, the commission passed

---

1. Robert's Rules of Order is a manual on parliamentary procedure.

a motion to reconsider its denial of the application. Robert's Rules of Order provide that an individual on the prevailing side of the original vote may move for reconsideration, seconded by any other member. Relator's representative orally opposed reconsideration. The commission's attorney advised that the commission could request additional information as long as it was conducted in a public forum. On December 15, 2004, at the commission's next regularly scheduled meeting, the commission scheduled a special meeting for December 30, 2004.

Prior to the December 30 meeting, relator filed a complaint and petition for a writ of prohibition against the commission and the individual commissioners in district court. Relator sought a judgment declaring that the commission violated the Minnesota Open Meeting Law and the Minnesota Administrative Procedures Act by sua sponte deciding to reconsider the application. Additionally, relator sought a writ of prohibition against a rehearing without the commission first establishing a procedure for reconsideration. On December 29, 2004, despite concern about the one-sided communications commissioners engaged in outside of the record regarding new information that triggered the motion for reconsideration, the district court ruled that the commission had inherent authority to reconsider its decisions and denied the writ.

At the December 30, 2004 meeting, the commission provided the reasons for reconsideration and discussed the new information that was learned outside of the record after the October 21 vote. The meeting was open to the public and all interested individuals were permitted to submit materials and to address the commission. The commission reopened the record and agreed to keep it open to re-

ceive additional information until January 18, 2005. On January 19, 2005, the commission conducted a regularly scheduled meeting with the issue of reconsideration on the agenda. The commission discussed four areas of concern: (1) housing and stabling; (2) transportation; (3) competition; and (4) community opposition. The commission determined that a newly proposed stabling plan was adequate. Further, new information provided by the Metropolitan Council and Anoka County officials indicated that the transportation system was adequate and that the facility would not burden the current traffic situation. Regarding competition, new information from North Metro and the HBPA indicated that an agreement by which North Metro would provide revenue from the new racetrack to supplement purse awards at Canterbury Park was imminent.[2] Finally, testimony and written submissions indicated that opposition was from a small but vocal minority and that there was broad community support for the facility. By a vote of five to three, the commission granted the application. On February 16, 2005, the commission voted to accept the formal order granting the application. This appeal follows.

## ISSUES

1. Did the commission lack authority and jurisdiction to reconsider its decision?

2. Did the commission violate relator's right to due process of law?

3. Is there substantial evidence in the record to support the commission's decision to grant North Metro's license?

## ANALYSIS

■■■ 1. "There is a presumption in favor of judicial review of agency decisions

---

2. An agreement was ultimately signed in May 2005.

in the absence of statutory language to the contrary." *Minn. Pub. Interest Research Group v. Minn. Envtl. Quality Council*, 306 Minn. 370, 376, 237 N.W.2d 375, 379 (1975).

> An appellate court may reverse or modify an administrative decision if substantial rights of the petitioners have been prejudiced by administrative findings, inferences, conclusions or decisions that are unsupported by substantial evidence in view of the entire record, or arbitrary and capricious, but the court must also recognize the 'need for exercising judicial restraint and for restricting judicial functions to a narrow area of responsibility lest (the court) substitute its judgment for that of the agency.' It must be guided in its review by the principle that the agency's conclusions are not arbitrary and capricious so long as a 'rational connection between the facts found and the choice made' had been articulated.

*In re Excess Surplus Status of Blue Cross & Blue Shield of Minn.*, 624 N.W.2d 264, 277 (Minn.2001) (citations omitted). "We presume the agency's decision ... is correct, but the court may reverse an agency decision if the decision was affected by an error of law." *N. States Power Co. v. Minn. Pub. Utils. Comm'n*, 344 N.W.2d 374, 377 (Minn.1984).

■■■ Relator first challenges the commission's authority and jurisdiction to sua sponte reconsider its decision. Whether an agency has jurisdiction over a matter is a legal question and, therefore, a reviewing court need not defer to "agency expertise." *Frost–Benco Elec. Ass'n v. Minn. Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984). "The party seeking review on appeal has the burden of proving that the agency has exceeded its statutory authority or jurisdiction." *Lolling v. Midwest Patrol*, 545 N.W.2d 372, 375 (Minn.

1996) (citing *Markwardt v. State, Water Res. Bd.*, 254 N.W.2d 371, 374 (Minn. 1977)).

■■■ Relator first argues that the commission lacked jurisdiction to reconsider its decision because the time for appeal had expired. "[J]urisdiction end[s] once the time to appeal from the order expire[s] without appeal having been taken." *Marzitelli v. City of Little Canada*, 582 N.W.2d 904, 904 (Minn.1998). Relator argues that the time to appeal the commission's November 15, 2004 order expired on December 16, 2004, and that the commission did not reopen the matter until December 30, 2004. The commission, however, passed a motion to reconsider its decision at its November 17, 2004 meeting. Relator had a representative at this meeting who orally opposed reconsideration. Further, relator concedes that the commission's "abrupt decision to grant reconsideration ... occurred a mere two days after it issued its final Findings, Conclusions and Order[.]" Thus, relator's argument fails because relator concedes that the commission passed a motion to reconsider its decision before the time for taking appeal expired.

■■■ Relator next argues that the commission may not sua sponte request reconsideration. Relator contends that although Minn.Stat. § 14.64 (2004) allows an agency to reconsider its decisions, reconsideration of a license denial is triggered only by a formal request. "If a request for reconsideration is made within ten days after the decision and order of the agency, the 30–day period provided in section 14.63 shall not begin to run until service of the order finally disposing of the application for reconsideration." Minn. Stat. § 14.64. While relator argues that no party requested reconsideration, the statute does not limit requests for reconsideration solely to those made by a party. Relator's argument fails because Minn.Stat.

§ 14.64 permits reconsideration within ten days after a decision and does not preclude a commissioner from requesting reconsideration. Further, relator contends that Minn.Stat. § 14.63 (2004) requires a formal written request with written notice of the grounds for a proposed reconsideration to satisfy due process. But Minn.Stat. § 14.63 addresses judicial review of contested cases; the statute does not apply to quasi-judicial proceedings, as is the case here.

■ Relator also argues that the commission's rules do not allow reconsideration. Relator contends that there is no legal authority permitting the commission to reconsider its decisions because the rules only permit reconsideration in disciplinary matters and in Class A license revocations or suspensions. Relator challenges the commission's reliance on Robert's Rules of Order because Minnesota statutes and rules take precedence over Robert's Rules of Order. But the rules cited by relator, Minnesota Rules 7897.0190 and 7897.0210, address contested-case hearings in disciplinary matters and in license revocations and suspensions. There is no statute or rule that addresses sua sponte reconsideration. Therefore, the commission has not inappropriately relied on Robert's Rules of Order because there is no Minnesota statute or rule that establishes a procedure for reconsideration in quasi-judicial license-application proceedings.

■ Finally, relator argues that caselaw supporting the commission's inherent authority to reconsider its decisions predates the Minnesota Administrative Procedure Act (APA), and that, unlike the Minnesota Racing Commission, other commissions have been granted express statutory authority to sua sponte reconsider their decisions. Relator mistakenly relies on the APA because the only time the

Minnesota statute regarding racetrack licenses refers to the APA is with regard to license suspensions or revocations. *See* Minn.Stat. § 240.06, subd. 7 (2004) ("A license revocation or suspension under this subdivision is a contested case under sections 14.57 to 14.69 of the Administrative Procedure Act[.]"). A license-issuance process is not a contested case, and, therefore, it is not subject to the APA. *See* Minn.Stat. §§ 14.63–.68 (2004).

The Minnesota Supreme Court recognized the inherent authority of an agency to reconsider its decisions in *State ex. rel. Turnbladh v. Dist. Ct.,* 259 Minn. 228, 107 N.W.2d 307 (1960). In that case, the warden of the Minnesota state prison filed suit against the commissioner of corrections after the two had discussed a matter of wrongdoing on the part of the warden and agreed that the warden had exhibited poor judgment; days later the warden was charged with misconduct. *Turnbladh,* 259 Minn. at 230, 107 N.W.2d at 309. The warden argued that the commissioner had lost jurisdiction after the two initially met to discuss the alleged wrongdoing. *Id.* at 231, 107 N.W.2d at 310. In holding that the commissioner had retained jurisdiction, the court stated: "an administrative agency has a well-established right to reopen, rehear, and redetermine the matter even after a determination has been made. This is a rule of general application." *Id.* at 236, 107 N.W.2d at 312. The court in *Turnbladh* relied on the holding of *Anchor Cas. Co. v. Bongards Co-op. Creamery Ass'n,* 253 Minn. 101, 91 N.W.2d 122 (1958). In *Anchor Casualty* the Minnesota Supreme Court stated:

It is generally recognized that one of the powers proper to an efficient and just administration of the right to adjudicate is the power to reverse adjudications which appear to be erroneous.... This power lasts until jurisdiction is lost by

appeal or certiorari or until a reasonable time has run, which would be at least coextensive with the time required by statute for review.

*Anchor Cas. Co.*, 253 Minn. at 106, 91 N.W.2d at 126. The court in *Anchor Casualty* stated further:

> Barring statutory regulation, the power may be invoked by administrative agencies to serve the ends of essential justice and the policy of the law. But there must be reasonable diligence. The denial to such tribunals of the authority to correct error and injustice and to revise its judgments for good and sufficient cause would run counter to the public interest. The function cannot be denied except by legislative fiat; and there is none such here. The power of correction and revision, the better to serve the statutory policy, is of the very nature of such governmental agencies. It involves the exercise of a sound discretion, controlled by the statutory considerations and the dictates of justice; the action taken must rest on reasonable grounds and be in no sense arbitrary.

*Id.* at 106–07, 91 N.W.2d at 126 (quotation omitted).

Here, the commission moved for reconsideration two days after it formally denied the application. The commission acted with diligence and retained jurisdiction. Because there is no statute barring the commission from reconsidering its decisions while it still has jurisdiction, the commission had inherent authority to reconsider its decision.

 2. Relator argues that the commission violated its right to due process when it provided no reasons for its decision to reconsider and did so without providing notice. The requirements of due process are measured according to the nature of the government function involved and whether private interests are directly affected. *Barton Contracting Co., Inc. v. City of Afton*, 268 N.W.2d 712, 715 (Minn. 1978). "[Q]uasi-judicial proceedings do not invoke the full panoply of procedures required in regular judicial proceedings." *Id.* at 716. The due-process rights required are simply reasonable notice of a hearing and a reasonable opportunity to be heard. *Id.*

 Relator contends that its due-process rights were violated when reconsideration was not on the commission's published agenda for the November 17 meeting. But there are approximately three pages of meeting minutes dedicated to discussions on reconsideration, including relator's oral opposition. Relator was offered reasonable notice and the right to be heard, especially in light of the fact that the only action taken on November 17 was a motion to reconsider the denial at a future meeting.

Relator next argues that the commission's admitted communications with North Metro after the October 21 vote denied relator due process of law. But the communications resulted in the commission reopening the entire record to receive additional information from any interested party; the communications did not result in an immediate reversal of the commission's decision. Relator was given notice of the December 30, 2004 meeting, at which the commission welcomed testimony, comments, documents, evidence, and anything relevant to the decision to reconsider and the decision whether to grant the license. Relator's attorney and many members of the community attended this meeting and were heard.

Finally, relator argues that the commission violated its due-process rights when it proceeded with its regularly scheduled meeting on January 19, 2005. Relator claims that the commission did not provide

notice that reconsideration would be considered prior to this meeting. But at the December 30 meeting, attended by relator's counsel, a commissioner stated that the public record was open through January 18 and anticipated that reconsideration would be on the January 19 meeting agenda. Relator received reasonable notice that the commission was going to address reconsideration at the next regularly scheduled meeting. Further, the record was open from December 30, 2004, until January 18, 2005, providing relator with a reasonable opportunity to be heard. The commission did not violate relator's right to due process of law.

■■■ 3. Relator next challenges the commission's decision to grant the license application. An agency acts in a quasi-judicial manner "when the commission hears the view of opposing sides presented in the form of written and oral testimony, examines the record and makes findings of fact." *Appeal of Signal Delivery Serv., Inc.*, 288 N.W.2d 707, 710 (Minn. 1980). When an agency acts in a quasi-judicial capacity, an appellate court applies the substantial evidence test on review. *In re Petition of N. States Power Co.*, 416 N.W.2d 719, 723 (Minn.1987). Substantial evidence is defined as: "(1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; or (5) the evidence considered in its entirety." *Minn. Ctr. for Envtl. Advocacy v. Minn. Pollution Control Agency*, 644 N.W.2d 457, 466 (Minn.2002).

The substantial evidence test requires a reviewing court to evaluate the evidence relied upon by the agency in view of the entire record as submitted. If an administrative agency engages in reasoned decisionmaking, the court will affirm, even though it may have reached a dif-ferent conclusion had it been the factfinder. The court will intervene, however, where there is a 'combination of danger signals which suggest the agency has not taken a "hard look" at the salient problems' and the decision lacks 'articulated standards and reflective findings.' *Cable Commc'ns Bd. v. Nor–West Cable Commc'ns P'ship*, 356 N.W.2d 658, 668–69 (Minn.1984) (citations omitted). Substantial judicial deference is given to administrative fact-finding. *Info Tel. Commc'ns, L.L.C. v. Minn. Pub. Utils. Comm'n*, 592 N.W.2d 880, 884 (Minn.App.1999), *review denied* (Minn. July 28, 1999). The burden of proving that an agency's decision is not supported by substantial evidence is on the relator. *In re Hibbing Taconite Co.*, 431 N.W.2d 885, 891 (Minn.App.1988). If the commission engaged in reasoned decisionmaking, this court will affirm. *See Cable Commc'ns Bd.*, 356 N.W.2d at 669.

■■■ There were four issues that caused the commission to initially deny North Metro's application: (1) housing and stabling; (2) transportation; (3) competition; and (4) local opposition. The February 16, 2005 order granting the license application addressed the new information the commission received while the record was reopened. First, North Metro presented a new stabling plan adequate to conduct harness racing. Specifically, North Metro increased the number of stables and accommodations for track employees—the original plan proposed 75 stalls and the new plan included 256 stalls plus off-track stabling. Second, the transportation and highway system was initially believed to be inadequate. The Metropolitan Council provided new statistical and study information showing that the current infrastructure is adequate; Anoka County officials concurred. Third, the commission was concerned about competition. But North Metro offered to provide revenue

from the racetrack to supplement purse awards at Canterbury Park. The HBPA, initially opposed to the license, confirmed that after a great deal of negotiating, there was the basis for an agreement. The commission determined that an agreement eased concerns regarding competition. Finally, the commission heard testimony from citizens and elected officials before determining that opposition was from a small but vocal minority and that there was broad community support for the facility. There is substantial evidence in the record to support the commission's grant of the license application. *See Minn. Ctr. for Envtl. Advocacy,* 644 N.W.2d at 466 (stating that substantial evidence is relevant evidence adequate to support a conclusion, more than a scintilla of evidence, more than some evidence, more than any evidence, or the evidence considered it its entirety).

Relator contends that a significant change of ownership occurred with respect to North Metro's parent company, Southwest Casino and Hotel Corp. (Southwest).

If a change in the officers, directors, shareholders, or other persons with a present or future direct or indirect financial or management interest in the licensee, or a change of ownership of more than five percent of the licensee's shares is made after the application is filed or the license issued, the applicant or licensee must notify the commission of the changes within five days of their occurrence and provide the affidavit required by subdivision 1, clause (d).

Minn.Stat. § 240.06, subd. 6 (2004). Relator argues that despite this disclosure the commission declined to investigate this change.

Relator's attorney submitted a letter to the commission stating that "the Securities and Exchange Commission reported a private placement of [Southwest] corporate stock in the amount of up to $50,000,000 with ... The Graves Group." At the February 16, 2005 meeting, the commission questioned Gordon Graves regarding his association with Southwest and his decision to make an investment in North Metro. Graves stated that he had no plans to make any change in North Metro's existing structure. One commissioner expressed confusion over a contradiction in relator's attorney's letter that the SEC had recorded a $50 million placement of stock and North Metro's assertion that it had not sold a share of stock. James Druck, North Metro's CEO, explained that there was potential for a future transaction subject to regulatory approval, including the commission's approval, but that the company had not sold one share of stock and that there was no change in ownership. Relator suggests that ownership was affected because Druck submitted information to the commission using Southwest stationery. But because "[w]e defer to an agency's conclusions regarding conflicts in testimony, ... and the inferences to be drawn from testimony[,]" we can presume that the commission believed that relator's argument for further investigation into a change in ownership was tenuous. *See Blue Cross & Blue Shield,* 624 N.W.2d at 278.

In the event this court does not reverse the commission's decision, relator moves this court to remand the matter to the commission or to the district court to determine alleged procedural irregularities. Relator contends that the commission granted North Metro's license application based on unlawful procedure because it relied on "ex parte" communications in requesting reconsideration. Although this court is not at ease with the commissioners' decisions to engage in one-sided, outside-of-the-record conversa-

tions, the commission did not grant North Metro's license based on these communications. While new information from these communications influenced some commissioners to request reconsideration, the commission voted to grant the application only after reopening the record and receiving additional information that supplemented the record. Furthermore, although it would have been better for the commissioners to have refrained from engaging in off-the-record communications, relator fails to provide any authority that the commissioners may not rely on these communications in moving for reconsideration.

Relator suggests that *Hard Times Cafe, Inc. v. City of Minneapolis,* 625 N.W.2d 165 (Minn.App.2001), supports its argument that this matter should be remanded. But *Hard Times Cafe, Inc.* involved adverse action against an existing license and a contested-case hearing before an administrative-law judge. *Hard Times Cafe, Inc.,* 625 N.W.2d at 169. The license-issuance process for a Class A license is not a contested case and, therefore, relator's reliance on *Hard Times Cafe, Inc.* is misplaced. Further, in *Hard Times Cafe, Inc.,* the city council was to make its decision in accordance with its manual, which prohibited ex parte contacts. *Id.* at 174. Relator offers no similar guidelines that the commission is required to use in making its decisions. Relator's motion is denied.

## DECISION

Relator has not met its burden of proving that the commission exceeded its statutory authority or jurisdiction in exercising its inherent authority to sua sponte move to reconsider a decision in a quasi-judicial proceeding when the time for appeal had not expired and no statute or rule proscribed such action. The commission did

not violate relator's right to due process of law because relator was afforded reasonable notice and a reasonable opportunity to be heard. Finally, the commission's decision is supported by substantial evidence.

**Affirmed; motion denied.**