*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0154**

In the Matter of the License of
Blaine Myles MacDonald, D.C. License No. 3343.

**Filed December 1, 2014
Affirmed
Halbrooks, Judge**

Minnesota Board of Chiropractic Examiners
License No. 3343

Mark A. Karney, Minneapolis, Minnesota (for relator)

Sara P. Boeshans, Nicholas B. Lienesch, St. Paul, Minnesota (for respondent)

Considered and decided by Halbrooks, Presiding Judge; Connolly, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HALBROOKS**, Judge

In this certiorari appeal, relator challenges respondent Minnesota Board of Chiropractic Examiners' order suspending his license to practice chiropractic. Relator argues that (1) the Board of Chiropractic Examiners Complaint Panel did not prove by a preponderance of the evidence that relator violated the terms of the stipulation and consent order entered into by the parties and (2) the board's determination that relator

violated the stipulation and consent order and the board's suspension of relator's license are arbitrary and capricious. We affirm.

## FACTS

Relator Blaine Myles MacDonald is a doctor of chiropractic and the subject of disciplinary action for engaging in sexual contact with a patient in 2011. The facts supporting the underlying disciplinary action are undisputed. Relator treated the patient from March 15, 2011, through November 4, 2011. Relator engaged in communications of a sexual nature with the patient beginning in September and had sexual contact with the patient in his chiropractic clinic in October and November 2011. The complaint panel found that relator's conduct violated Minn. Stat. § 148.10, subds. 1(a)(11), (20), 1(e)(2) (2012) (authorizing the board to discipline a chiropractor for unprofessional conduct, which includes sexual conduct with a patient).

Relator met with the complaint panel and agreed to the terms of a stipulation for disciplinary action due to the inappropriate sexual conduct with the patient. Relator signed the consent order on March 6, 2013. The board adopted the order on April 18, 2013. The terms and conditions of the order relevant to this appeal are (1) a two-year suspension of relator's license, stayed after relator served 45 days of the suspension, and (2) the required presence of a third-party adult "in the same room at all times" when relator examined or treated any female patient.

The order states that, if the complaint panel had probable cause to believe that relator failed to comply with or violated any of the terms and conditions of the order, the complaint panel could remove the stayed suspension, effective upon service of an order

2

of removal of stayed suspension. After service of the order of removal, the board would hold a hearing, and the complaint panel would have the burden of proving by a preponderance of the evidence that a violation occurred. The order states that the board could take into account relator's correction of a violation, but such a correction would not limit the board's authority to impose discipline. If the board found that the complaint panel proved a violation by a preponderance of the evidence, the order authorized the board to "impose additional discipline, including lifting of the stay on the suspension, additional conditions or limitations on [relator's] practice, an additional period of suspension, additional conditions of reinstatement, or revocation of [relator's] license."

Relator continued to practice chiropractic and treat patients after the board adopted the consent order on April 18, 2013. On June 13, 2013, the attorney general's office informed relator that the board had intended the 45-day suspension of his license to begin on April 18, 2013, and that he might be in violation of the consent order. Relator immediately ceased his practice and did not practice for the next 45 days.

With respect to the second condition of the consent order, the attorney general's office became aware of a complaint that relator treated female patients between April 19 and June 4, 2013, without a third-party adult present in the exam room at all times. On September 26, 2013, the complaint panel issued an order of removal of stayed suspension based on probable cause that relator violated the requirements of the consent order. The order of removal immediately suspended relator's license and stated that the violation provided grounds for further disciplinary action. The complaint panel provided notice of the order of removal to relator and set a hearing date.

On October 7, 2013, two female patients, K.K. and J.N., signed affidavits, stating that a third-party adult was not present during their treatments. On December 2, 2013, relator's wife signed an affidavit stating that she is a staff person at relator's clinic and that she witnessed all of the treatments provided to K.K. and J.N. Relator's wife stated in her affidavit that she tried "to remain inconspicuous for the privacy and comfort" of the patients. Relator's wife also explained that patients face away from the door, so it was possible that K.K. and J.N. were unaware of her presence. Relator submitted his treatment notes for K.K.'s and J.N.'s visits, which were signed by relator's wife, indicating that she was present for the treatments.

The hearing was held on December 12, 2013. Relator and the complaint panel presented arguments to the board regarding relator's alleged violations of the consent order. The complaint panel argued that relator admitted that his wife observed from the hallway because the exam room was too small to have a third-party adult in the room.

The board issued its final order on December 30, 2013, finding that the complaint panel had probable cause to remove the stay of suspension because relator violated the consent order by treating patients during his 45-day suspension and by treating two female patients without a third-party adult present in the same room. The board found that the complaint panel proved by a preponderance of the evidence that relator violated the consent order, and the board suspended relator's license for a minimum of 485 days, with credit for 120 days. This certiorari appeal follows.

# DECISION

## I.

"An agency's quasi-judicial determinations will be upheld unless they are . . . unsupported by substantial evidence, or arbitrary and capricious." *Cole v. Metro. Council HRA*, 686 N.W.2d 334, 336 (Minn. App. 2004) (quotation omitted). We give great deference "to administrative fact-finding." *In re N. Metro Harness, Inc.*, 711 N.W.2d 129, 137 (Minn. App. 2006), *review denied* (Minn. June 20, 2006). Agency decisions have a "presumption of correctness," and we defer to agency expertise. *Cable Commc'ns Bd. v. Nor-west Cable Commc'ns P'ship*, 356 N.W.2d 658, 668 (Minn. 1984).

First, relator argues that substantial evidence does not support the board's determination that the complaint panel established by a preponderance of the evidence that relator violated the consent order. "Substantial evidence is defined as: (1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; or (5) the evidence considered in its entirety." *Cannon v. Minneapolis Police Dep't*, 783 N.W.2d 182, 189 (Minn. App. 2010) (quotation omitted). The substantial-evidence test requires us "to evaluate the evidence relied upon by the agency in view of the entire record as submitted. If an administrative agency engages in reasoned decisionmaking, the court will affirm, even though it may have reached a different conclusion had it been the factfinder." *Cable Commc'ns Bd.*, 356 N.W.2d at 668-69 (citation omitted).

The board determined that the complaint panel proved by a preponderance of the evidence that relator violated the consent order, specifically finding that the complaint panel had probable cause to believe that (1) relator engaged in chiropractic practice during his 45-day suspension and (2) relator treated female patients without a third-party adult present in the same room at all times.

## A.    45-Day Suspension

The parties do not dispute the fact that relator continued to practice during the 45 days after the board signed and adopted the consent order on April 18, 2013. Relator admits that he continued to practice after April 18 and after he was served with the consent order on or about May 2, 2013. But the parties disagree as to when relator was supposed to serve the 45-day suspension.

Relator contends that the ambiguous language of the order made it unclear when the 45-day suspension would start; he believed that he could serve the 45-day suspension at any time during the six-month period that he was given to complete the other terms in the order. Relator also argues that when he served the 45 days is not as important as actually serving the suspension, and relator began serving the suspension when the attorney general's office brought it to his attention in June. At the December 12 hearing, the complaint panel argued that the consent order clearly stated when the 45-day suspension would commence.

The consent order states, "The Board hereby SUSPENDS [relator's] license for two (2) years as of the effective date of this Order, provided that the suspension shall be STAYED after 45 days contingent upon [relator's] compliance with the terms and

6

conditions in paragraphs B and C." The board implicitly determined that the effective date of the order was when it adopted the order, which was April 18, 2013, and that this was the date that relator's 45-day suspension began. The board then found that there was probable cause to believe that relator treated patients during his 45-day suspension and that the complaint panel proved by a preponderance of the evidence that relator violated the consent order.

The paragraph of the consent order suspending relator's license does not contain an actual calendar date for the start of the suspension, and it does not explain how relator would be informed of the effective date of the order. The order, as written, does not contain a sufficient amount of specificity to have informed relator when he needed to begin serving his 45-day suspension. Because of the lack of specificity, we conclude that substantial evidence does not support the board's determination that the complaint panel established by a preponderance of the evidence that relator violated the consent order by not beginning to serve his 45-day suspension on April 18, 2013.

**B.     Third-Party Presence**

The complaint panel submitted signed affidavits of two female patients, K.K. and J.N., stating that relator treated them between April and June 2013 without a third-party adult in the room. At the December 12 hearing, the complaint panel argued that relator admitted that "his wife was, in fact, in the hallway or in the doorway," even though the consent order required the third-party adult to be in the same room at all times. The complaint panel also argued that relator stated that the treatment room at one of his offices was too small to have a third-party adult in the room with him and the patient.

Relator disputed these allegations by offering evidence that a third-party adult was present at all times while treating K.K. and J.N. Relator submitted a signed affidavit by his wife, stating that she was present during the treatments. And he submitted his treatment notes from the days in question, each containing his wife's signature verifying her presence. Relator also submitted letters from other patients, stating that a third-party adult was in the room during their treatments and attesting to relator's general good character and fitness as a chiropractor. The complaint panel argued that these letters were irrelevant to the issue of whether a third-party adult was present for the treatments of K.K. and J.N. on the dates specified in their affidavits. The board found that the complaint panel proved by a preponderance of the evidence that relator treated two female patients without a third-party adult present in the same room.

The board's determination must be supported by substantial evidence. *Cable Commc'ns Bd.*, 356 N.W.2d at 668. On review, this court will affirm if "an administrative agency engaged[d] in reasoned decision-making." *Id.* at 669. We will intervene only "where there is a combination of danger signals which suggest the agency has not taken a hard look at the salient problems and the decision lacks articulated standards and reflective findings." *Id.* (quotations omitted). Here, the complaint panel and relator produced conflicting evidence as to whether a third-party adult was present in the same room for all of K.K.'s and J.N.'s treatments. The board articulated the appropriate burden of proof, heard both parties' arguments through written materials and oral argument, and found that the complaint panel had proved by a preponderance of the evidence that a third-party adult was not always present in the same room during K.K.'s

and J.N.'s treatments. There is nothing to suggest that the board failed to engage in "reasoned decisionmaking." We therefore conclude that substantial evidence supports the board's determination that the complaint panel proved by a preponderance of the evidence that relator treated female patients without a third-party adult present in the same room at all times.

**II.**

Relator argues that we should reverse the board's determination because it is arbitrary and capricious. An agency's decision is not arbitrary and capricious if "a rational connection between the facts found and the choice made" exists or "[i]f there is room for two opinions on a matter." *In re Review of 2005 Annual Automatic Adjustment of Charges (In re 2005 Adjustment)*, 768 N.W.2d 112, 120 (Minn. 2009) (quotation omitted). But an agency's conclusion is arbitrary and capricious "when it is an exercise of that agency's will, rather than its judgment." *In re Friedenson*, 574 N.W.2d 463, 467 (Minn. App. 1998), *review denied* (Minn. Apr. 20, 1998).

Relator argues that the board's decision was an exercise of its will rather than its judgment and that the suspension of his license is arbitrary. Because we conclude that the complaint panel failed to meet its burden to prove that relator violated the first condition of the consent order by practicing chiropractic during his 45-day suspension, the first ground was not a valid basis upon which to remove the stay of suspension on his license. But with respect to the second condition of the order, we conclude that the board's decision was not arbitrary and capricious based on the substantial evidence to

9

support its determination that a third-party adult was not present in the same room at all times during K.K.'s and J.N.'s treatments.

Relator argues that the board's determination is arbitrary and capricious because the complaint panel should have contacted his wife, who signed his treatment notes, to verify third-party supervision of each questioned visit. But the complaint panel considered the facts before it to determine probable cause, and the board held a full hearing and reviewed relator's wife's affidavit before issuing its final order suspending relator's license. While there may be room for differing opinions on whether relator treated K.K. and J.N. without a third-party adult present in the room at all times, this does not mean that the board's decision was arbitrary and capricious. *See In re 2005 Adjustment*, 768 N.W.2d at 120, 123 (holding that even though there was room for differing opinions, the agency's conclusion in favor of one opinion over another was not arbitrary and capricious). A rational connection exists between the factual allegations that no third-party adult was present during K.K.'s and J.N.'s treatments and the suspension of relator's license.

Relator also argues that the board exercised its will because it severely penalized relator by imposing an additional 485-day suspension. "[T]he assessment of penalties and sanctions by an administrative agency is . . . the exercise of a discretionary grant of power" and will only be reversed if the agency abuses that discretion. *In re Haugen*, 278 N.W.2d 75, 80 n.10 (Minn. 1979). In the consent order, relator agreed to a two-year suspension with all but 45 days stayed, contingent upon his compliance with the requirements of the order. Under the terms of the stipulation, if relator violated the terms,

10

his license could have been suspended for the full two years. The board found that relator violated the order, removed the stay of suspension, and imposed a suspension of 485 days, with credit for 120 days. As a result, relator's license was ultimately suspended for less time than the original two-year period in the stipulation and consent order. The length of relator's suspension was not an abuse of the board's discretion, nor is it excessive or arbitrary and capricious.

**Affirmed.**