*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1858**

Tracy A. Dolin,
Relator,

vs.

Metro Housing and Redevelopment Authority,
Respondent.

**Filed May 4, 2015
Affirmed
Stauber, Judge**

Metropolitan Housing and Redevelopment Authority
File No. yy09450

Tracy A. Dolin, Plymouth, Minnesota (pro se relator)

Mary G. Dobbins, Landrum Dobbins, L.L.C., Minneapolis, Minnesota (for respondent)

Considered and decided by Hooten, Presiding Judge; Stauber, Judge; and Crippen, Judge.[*]

**U N P U B L I S H E D   O P I N I O N**

**STAUBER**, Judge

Following the termination of her housing benefits, relator argues that respondent housing authority's termination of her benefits was premature and that the record does not contain sufficient grounds to support the termination. We affirm.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## FACTS

Relator Tracy Dolin contests the termination of her Section 8 Housing Choice Voucher benefits by respondent Metro Housing and Redevelopment Authority (Metro HRA). In December 2013, Dolin entered into a new 12-month apartment lease in Brooklyn Center. Dolin had previously signed Metro's Rent Assistance Statement of Responsibilities which states that "[i]f I commit any serious or repeated lease violations . . . HRA *will terminate* my rent assistance" and "if I move prior to living in a unit for twelve (12) months, my assistance will be terminated"[1]

On June 19, 2014, the police notified apartment management that they had been called to Dolin's apartment for nuisance misconduct. The next day, apartment management sent Dolin a letter regarding the nuisance (noise) complaint, informing her that "one more violation will result in your immediate termination." On July 11, 2014, apartment management sent Dolin a second letter notifying her that it had received numerous noise complaints about her apartment which resulted in multiple police calls. Apartment management informed Dolin that it would terminate her lease if she did not submit a written intent-to-vacate notice. Dolin submitted the intent-to-vacate notice. While she attempted to withdraw it five days later, apartment management informed her that it had already accepted the notice.

Metro HRA then terminated Dolin's housing benefits for her failure to reside in only one unit during a 12-month period. Dolin requested an informal hearing on the

---

[1] Federal regulations allow a public housing authority to prohibit more than one move by a family during any one-year period. 24 C.F.R. § 982.314(c)(2)(i) (2014).

termination, challenging the sufficiency of the grounds for her eviction.  Dolin admits

there were at least two police calls to her apartment: one on June 16, 2014, for a noise

complaint, and one on June 25, 2014, for a welfare check after Dolin was purportedly

"hysterical" and screaming.

At the informal hearing in September 2014, Metro HRA informed Dolin that it

would offer her a reasonable accommodation if she would address her ongoing housing

issues.  Dolin stated that she did not want to do so.  The hearing officer upheld Metro

HRA's decision, noting Dolin's history of failure to fulfill her lease terms.  Dolin then

took this certiorari appeal.

### D E C I S I O N

Dolin argues that the hearing officer erred by upholding Metro HRA's decision to

terminate her housing benefits.  "An agency acts in a quasi-judicial manner when [it]

hears the view of opposing sides presented in the form of written and oral testimony,

examines the record and makes findings of fact." *In re N. Metro Harness, Inc.*, 711

N.W.2d 129, 137 (Minn. App. 2006) (quotation omitted), *review denied* (Minn. June 20,

2006).  Because Metro HRA's hearing officer received evidence and took testimony from

both parties, she acted in a quasi-judicial manner.  *See Carter v. Olmsted Cnty. Hous. &*

*Redev. Auth.*, 574 N.W.2d 725, 729 (Minn. App. 1998) (holding that an HRA acted in a

quasi-judicial capacity when it took evidence and heard testimony).  We will uphold the

hearing officer's decision unless it is "unconstitutional, outside the agency's jurisdiction,

procedurally defective, based on an erroneous legal theory, unsupported by substantial

evidence, or arbitrary and capricious." *Wilhite v. Scott Cnty. Hous. & Redev. Auth.*, 759 N.W.2d 252, 255 (Minn. App. 2009) (quotation omitted).

Dolin argues that there were insufficient grounds for her eviction and thus contends that the hearing officer's decision was unsupported by substantial evidence. In reviewing whether there is substantial evidence, we evaluate the entire record and will affirm "[i]f an administrative agency engages in reasoned decision making." *In re N. Metro Harness, Inc.*, 711 N.W.2d at 137 (quotation omitted).

Nine months into Dolin's lease, apartment management notified Dolin that due to numerous noise complaints and multiple police calls, Dolin was in violation of her lease and was required to submit an intent-to-vacate notice or her "residency [would] be terminated." While Dolin attempts to distinguish between a police call for a noise complaint and a police call for a welfare check, both police reports note that there was excessive noise from Dolin's apartment. Further, apartment management also relied on numerous noise complaints made by other tenants as a basis for the lease violation. Dolin claims that these complaints were submitted by tenants who did not like her, but provides no evidence that the complaints were fraudulently made. Additionally, Dolin provides no support for her assertion that apartment management did not have proper grounds to evict her because she did not have three violations for which the police were called.

In a detailed order summarizing the evidence submitted and the parties' testimony, the hearing officer found that Dolin was asked to vacate her apartment after nine months despite her obligation to live in that unit for 12 months. The record clearly demonstrates that Dolin was required to move before residing in the same unit for 12 months and that

4

her failure to reside in the same unit for 12 months would result in the termination of her benefits. Therefore, we conclude that the hearing officer engaged in reasoned decision making and did not err in upholding Metro HRA's decision to terminate Dolin's benefits.

Dolin finally argues that because she had not yet moved at the time of the informal hearing, the notice of termination of benefits was premature. But Metro HRA was required by statute to notify Dolin before terminating her assistance to allow her sufficient time to challenge the termination. 24 C.F.R. § 982.555(c)(2) (2014). We also agree with Metro HRA's assertion it would be unreasonable to delay a decision on termination of housing benefits until the actual eviction date because Metro HRA would be obligated to continue Dolin's benefits and move her to another location for a short period during the pendency of the hearing process. This would result in instability in the benefits system, damage to Metro HRA's interest in maintaining long-term relationships with landlords, the incursion of significant costs, and insufficient time for tenants to make alternate plans. We conclude that the timing of the notice was proper.

**Affirmed.**