*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2038**

In the Matter of 2014 Class C
License Application
of Dr. Mohamed El Deeb

**Filed September 8, 2015
Affirmed
Ross, Judge**

Minnesota Racing Commission

Katherine C. Bloomquist, Bloomquist Law Firm, LLC, Chaska, Minnesota (for relator)

Lori Swanson, Attorney General, Stephen D. Melchionne, Assistant Attorneys General, Joan M. Eichhorst, St. Paul, Minnesota (for respondent Minnesota Racing Commission)

Considered and decided by Peterson, Presiding Judge; Ross, Judge; and Schellhas, Judge.

## U N P U B L I S H E D   O P I N I O N

**ROSS**, Judge

The Minnesota Racing Commission denied Dr. Mohamed El Deeb's applications for racehorse-owner licenses after conducting an investigation into the quality of El Deeb's care for horses. The investigation revealed that El Deeb lied about his criminal record in his license applications and that he improperly cared for his horses. El Deeb appeals by writ of certiorari, arguing that the commission violated his right to due process of law and that the decision was arbitrary and capricious and lacking evidentiary support.

The commission afforded El Deeb the process he was due in the form of reasonable notice and an opportunity to be heard. And substantial evidence belies El Deeb's capriciousness allegation. We therefore affirm.

**FACTS**

Mohamed El Deeb applied for two Class C racehorse-owner licenses with the Minnesota Racing Commission in early May 2014. El Deeb and his attorney, Katherine Bloomquist, inquired about his applications by contacting Tom DiPasquale, the commission's executive director. DiPasquale informed El Deeb that the commission was investigating his applications.

Bloomquist maintained frequent contact with DiPasquale about the investigation until June 26, 2014. That's when DiPasquale notified Bloomquist that the commission had scheduled a July 15 meeting about El Deeb's applications. This date was chosen, in part, to accommodate Bloomquist's vacation plans in early July. The commission gave Bloomquist its complete investigative file. One week before the scheduled July 15 meeting, Bloomquist requested that it be postponed. The commission arranged with Bloomquist for the committee meeting to occur on August 14, 2014, to consider El Deeb's license applications. Bloomquist and El Deeb were both present at the August 14 meeting. The commission's compliance-committee chairman began the meeting by describing its process:

> [T]his is a committee meeting, not a public hearing, not an adversarial proceeding and not a hearing of an appeal from action that has already been taken. Therefore, there will be no cross-examination of witnesses or opportunities for rebuttal testimony unless allowed by the chair. Having said that I

2

intend to be fair to both sides and to offer opportunity for rebuttal if requested.

The committee heard from the commission's chief steward, Rene Riera. Riera read the commission's board of stewards' recommendation that the commission deny El Deeb's applications. The recommendation outlined dishonesty and horse-care concerns about El Deeb:

> On numerous occasions over the years [El Deeb's] misdeeds have brought him face-to-face with the stewards seeking answers for his transgressions. His uncanny ability to misrepresent and to [mislead] events is recognized by stewards and other horsemen as well. His falsification of license applications from 2009 to the present leaves out his plea of guilty in a case of mistreatment of animals under his care and failure to adhere to statutory provisions governing shelter for them in 2008.

Riera also identified other concerns. He explained that a certificate of veterinary inspection falsely indicated that a horse was owned by El Deeb's wife when it was actually owned by El Deeb. Riera and another steward, Thomas Davis, told the committee that in 2013 El Deeb had no proof of workers' compensation insurance for his employees. A third steward, David Hooper, offered evidence to the committee that El Deeb had been active as a horse owner for the previous month despite his having no license.

John Flynn, the commission's security director, also told the committee about El Deeb's failure to obtain workers' compensation insurance for his employees. Flynn had investigated this issue in 2013. El Deeb had provided Flynn with copies of his

insurance policies in September 2013, but when Flynn checked with the insurance carrier, he discovered that all of the policies had been previously cancelled.

The committee also looked back to El Deeb's prior license applications. In his 2009 application, El Deeb had been asked, "Have you ever been arrested for or charged with any crime, including driving violations?" El Deeb responded "no" to this question. He responded the same in his 2011 and 2014 applications. The committee learned that the response was false. In August 2008, before El Deeb completed any of these applications, Wright County had charged El Deeb with two counts of mistreating animals and one count of equine-shelter violation. El Deeb submitted to the committee an affidavit from his criminal-defense attorney in that case that also listed these charges. El Deeb entered a plea of guilty to the shelter-violation charge in August 2009, but his plea was dismissed in August 2010 under a stay of adjudication.

Buck and Karen Wheeler travelled from Kentucky to speak to the committee about their experience with El Deeb's horses. The Wheelers had filed a complaint with the commission after years of interaction with El Deeb. The Wheelers had received from El Deeb mares that had not been properly sutured after giving birth, and a couple had staph infections. The Wheelers strongly considered not returning at least one mare to El Deeb because of the poor condition she was in when they received her from him.

The committee heard from Dr. Lynn Hovda, the commission's chief veterinarian. She reviewed 36 photographs that Mr. Wheeler sent to the commission with his complaint. Dr. Hovda found the conditions for the horses at El Deeb's farm "disturbing" and said that they showed "neglect and poor management." She also concluded that

4

El Deeb's horses suffered from multiple ailments. In addition to her photographic review, Dr. Hovda told the committee about her own experience conducting pre-race inspections of El Deeb's horses: "[W]e had reached the point with Dr. El Deeb and his horses that we no longer went to his barn to do pre-race inspections, just one of us, we took two. . . . [W]e had two veterinarians there primarily to protect ourselves, make sure that everything was going the way it was."

John Kilgannon appeared at the hearing on his own initiative and asked to address the committee. Kilgannon described his observations when he examined a horse for sale on El Deeb's farm in early 2014. He said that the horses had no food, that they were standing on concrete, and that their watering buckets were frozen, containing only solid ice. He described the horses' conditions as "living in hell" and "atrocious."

Animal Humane Society agent Keith Streff addressed the committee. He had investigated El Deeb and submitted a report. Streff has known El Deeb for years and had "received many complaints . . . from many different individuals, investigators, employees, passer-by's [sic], neighbors, elected officials, commissioners and the like." Based on his investigation, Streff concluded that El Deeb's practices constitute "long obvious systematic negligence that results in potential pain, suffering and subsequent death of horses." He noted specifically in his report a fire that had occurred on El Deeb's farm, killing 18 horses.

Dr. Christy Klatt spoke to the committee. She is a veterinarian with the commission. She told the committee about having to disqualify one of El Deeb's horses on the day of a race in 2013 because the horse had a tendon injury. Although the injury

5

should have been allowed months to heal, El Deeb scheduled a workout for the horse at the track after only one week. Dr. Klatt examined the horse before its scheduled workout and concluded that the injury had worsened. She disqualified another of El Deeb's horses that same summer because it had shin splints. Referring to El Deeb, Dr. Klatt stated, "[I]n my ten seasons as a commissioner veterinarian, I've never seen another trainer who would even have thought to race these two horses in this condition. I mean, either one of these could have led to catastrophic injuries during a race."

Sean Corrigan has worked as the director of security for emergency medical services at Canterbury Park for 20 years. He ensures that horsemen provide appropriate documents for their horses to show that they are in good health. He told the committee, "I can tell you that I would be hard pressed right now looking back in the archives to find someone that is more labor intensive and concerning than Dr. El Deeb." As the only person to address the panel from Canterbury Park, Corrigan expressed to the panel that Canterbury Park "fully endorses and supports the commission's request that Dr. El Deeb's racing commission license be denied."

After the committee heard from these witnesses, DiPasquale invited Bloomquist to present evidence on El Deeb's behalf. Although Bloomquist had been given permission to question all three stewards who addressed the committee, she questioned only Riera. She examined both Drs. Klatt and Hovda. She also questioned the Wheelers and Streff. El Deeb also addressed the committee at length. He did not offer any other witnesses on his behalf, but he did submit the affidavit from his criminal-defense attorney. He also submitted an affidavit from a veterinarian who opined that, in her experience working

6

with El Deeb, his care for his horses often exceeded what she saw in other owners. The committee offered El Deeb the opportunity to supplement the record after the August 14 meeting.

The commission held its regularly scheduled meeting on August 21, during which it considered El Deeb's applications. Bloomquist attended the meeting and spoke for El Deeb. In September 2014 the commission issued its order denying El Deeb's license applications. El Deeb requested that the commission reconsider its decision. The commission addressed El Deeb's request at its next regularly scheduled meeting, where Bloomquist again presented El Deeb's case. The commission issued amended findings of fact in October 2014, but it held to its decision denying El Deeb's applications. El Deeb now petitions this court for a writ of certiorari.

## DECISION

El Deeb urges us to reverse the commission's denial of his license applications on two grounds. He contends that he was denied due process of law. And he argues that the commission's decision is an arbitrary and capricious determination that is not supported by substantial evidence. Neither argument has merit.

## I

El Deeb was not denied due process of law. To satisfy El Deeb's due process rights, the commission was required only to provide reasonable notice of a hearing and a reasonable opportunity to be heard because "quasi-judicial proceedings do not invoke the full panoply of procedures required in regular judicial proceedings." *Barton Contracting Co., Inc. v. City of Afton*, 268 N.W.2d 712, 716 (Minn. 1978); *see also In re Class A*

7

*License Appl. of N. Metro Harness, Inc.*, 711 N.W.2d 129, 136 (Minn. App. 2006), *review denied* (Minn. June 20, 2006).

The commission afforded El Deeb notice and a reasonable opportunity to be heard. Through his attorney, El Deeb was in regular communication with the commission about the compliance-committee meeting. The commission rescheduled the meeting to accommodate attorney Bloomquist's personal calendar. The commission provided El Deeb formal, written notice of its committee meeting and the grounds for the board of stewards' recommendation to deny his applications. The committee gave El Deeb the opportunity to speak and present his case at the committee meeting and again at the commission's September and October 2014 regularly scheduled meetings. He availed himself of each opportunity. El Deeb claims that he was not assigned sufficient time to present his case at the committee meeting, but the record belies the claim. Bloomquist questioned many of the witnesses who spoke against his applications. The record does not indicate that she ever requested but was denied the opportunity to question any witness or present any evidence. The committee invited El Deeb to present any information during the September meeting, and it also held the record open after the meeting so that he could provide any additional evidence. El Deeb had ample notice of the committee meeting and ample opportunity to be heard during and after it.

El Deeb implies a due process violation based on the commission's allegedly having made its decision to deny his applications even before completing its investigation and holding the meetings. He says that his application was "red flagged" by the commission because of his 2013 workers' compensation insurance incident. The

allegation is speculation, devoid of any supporting evidence. And El Deeb offers no legal support for his premise that being "red-flagged" for scrutiny after a prior violation implicates his due process rights.

El Deeb also focuses on a circumstance that occurred before the committee hearing and the denial: the board of stewards' recommendation of denial. He claims that he was not afforded reasonable notice or an opportunity to be heard as to the recommendation. He does not explain why he is entitled to due process in the stewards' mere recommendation. The commission's board of stewards can only "make recommendations to the commission as to the qualifications of all applicants for Class C licenses." Minn. R. 7879.0200, subp. 2(D) (2013). The board has no authority to grant or deny license applications. This authority lies exclusively with the commission. 2015 Minn. Laws ch. 77, art. 4, § 8, at 65 (amending Minn. Stat. § 240.03(2) (2014)). The board did not make any decision that affected El Deeb's rights; it made a recommendation about which the commission gave El Deeb notice and to which he had the full opportunity to respond before the commission made its decision.

The commission provided El Deeb with reasonable notice and an opportunity to be heard before it denied his license applications. His due process rights were vindicated.

**II**

We find baseless El Deeb's contention that a lack of substantial evidence both undermines the commission's denial and renders the denial arbitrary and capricious.

We defer to an administrative agency's fact finding, and a relator has the burden of showing that the agency's decision is not supported by substantial evidence. *N. Metro*

9

*Harness*, 711 N.W.2d at 137. An agency's decision is not arbitrary and capricious "so long as a rational connection between the facts found and the choice made has been articulated." *In re Excess Surplus Status of Blue Cross & Blue Shield of Minn.*, 624 N.W.2d 264, 277 (Minn. 2001) (quotation omitted). The commission has the discretion to issue Class C licenses to applicants "qualified for the occupation for which licensing is sought and [who] will not adversely affect the public health, welfare, and safety or the integrity of racing in Minnesota." 2015 Minn. Laws ch. 77, art 4, § 10, at 66 (amending Minn. Stat. § 240.08, subd. 4 (2014)). The commission denied El Deeb's license applications because it found that, based on the record, "continued licensure of El Deeb is inconsistent with the best interests of racing in Minnesota, poses a threat to the integrity of racing in Minnesota, and would adversely affect public safety, health and welfare, most importantly, that of the equine participants." Based on our standard of review, deferring to the agency's fact-finding effort we will uphold the denial unless the evidence does not rationally support it.

It is difficult to imagine a less compelling assertion of insufficient evidence than El Deeb's. The commission received from various sources testimony and documentation (substantial evidence) that El Deeb represents a threat to the safety and welfare of his horses and other racing participants. There is no need to recount the evidence again; we are well satisfied that it provided a rational ground on which the commission could conclude that El Deeb has a sustained history of deceit on matters relevant to his license application and of neglect and inhumane care of horses. That he has lied consistently in multiple applications about having been previously charged with a crime is undeniable.

10

This alone would likely lead us to reject his "arbitrary and capricious" argument. That multiple apparently reliable and knowledgeable witnesses detailed his mistreatment of horses is also undeniable. This alone, too, would likely lead us to reject his argument. Considering the record as a whole, we have no difficulty concluding that the evidence rationally supports the commission's determination that El Deeb poses a threat to the integrity of Minnesota horse racing.

**Affirmed.**