*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1534**

In the Matter of 2015 Class C License Application of Dr. Mohamed El Deeb.

**Filed September 12, 2016
Affirmed; motion denied
Smith, Tracy M., Judge**

Minnesota Racing Commission

Josh Casper, St. Paul, Minnesota; and Todd Young, Roseville, Minnesota (for relator Dr. Mohamed El Deeb)

Lori Swanson, Attorney General, Joan M. Eichhorst, Assistant Attorney General, St. Paul, Minnesota (for respondent Minnesota Racing Commission)

Considered and decided by Larkin, Presiding Judge; Smith, Tracy M., Judge; and Klaphake, Judge.[*]

**U N P U B L I S H E D   O P I N I O N**

**SMITH, TRACY M.**, Judge

Relator Dr. Mohamed El Deeb challenges respondent Minnesota Racing Commission's (MRC) denial of his 2015 application for a Class C racehorse-owner license. El Deeb argues that (1) the MRC's decision is not supported by substantial evidence, (2) the MRC's decision is arbitrary and capricious because the MRC considered an outstanding account without a creditor complaint and because the MRC's

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

decision reflected its will and not its judgment, (3) the MRC deprived him of his rights to due process and equal protection, and (4) the MRC was statutorily prohibited from considering El Deeb's criminal charges for false statements on his prior applications. The MRC filed a motion to strike three portions of El Deeb's reply brief. We affirm and deny the motion to strike.

**FACTS**

In February 2015, El Deeb applied for a Class C racehorse-owner license from the MRC. El Deeb's 2014 Class C license application had been denied due to El Deeb's failure to maintain workers' compensation insurance; failure to disclose animal-mistreatment and traffic-law-violation charges; horse neglect and death as evidenced by a Minnesota Animal Humane Society report; a written complaint of animal neglect from an out-of-state party with substantiating photos; complaints and information regarding El Deeb's business practices; and concerns about his competence as an owner and breeder, financial responsibility, and reputation for honesty. The 2014 denial constituted prima facie evidence of El Deeb's unfitness for licensure, placing the burden on El Deeb to prove his fitness for licensure in 2015. *See* Minn. R. 7877.0125, subp. 2 (2015).

In March and April 2015, the MRC sent El Deeb four notices, one via certified mail, one via first-class mail, and two via e-mail, that his 2015 license application would be on the agenda at an upcoming meeting of the MRC's Administrative Affairs Committee (the committee) and a subsequent MRC meeting. El Deeb did not attend either meeting, and the MRC denied El Deeb's 2015 license application.

2

In its order denying El Deeb's 2015 application, the MRC incorporated the basis for the 2014 license denial as part of the basis for its 2015 decision. The MRC also cited several new matters: (1) a barn fire at one of El Deeb's farms in December 2014 in which ten horses perished, (2) El Deeb's lender placing force-placed insurance coverage on El Deeb's property because his previous policy had been cancelled, and (3) an outstanding account of more than $38,000 with Prairie Farm Supply. The MRC also found that it had sent multiple notices to El Deeb via e-mail and mail and that it had posted meeting notices and agendas referencing his license application at the MRC office and on the MRC website. The MRC concluded that, due to the 2014 license denial, El Deeb bore the burden of proving his fitness for licensure and that he failed to meet that burden.

After the MRC denied his 2015 application, El Deeb e-mailed the MRC's executive director claiming that he had not received notice of the meetings concerning his application "in a timely fashion." In the same e-mail, El Deeb requested that the MRC reconsider its decision to deny his 2015 application. The executive director replied that the MRC placed El Deeb's request for reconsideration on the agenda for the MRC's next regularly scheduled meeting and informed El Deeb of the meeting's time and location. El Deeb responded that he would attend if the executive director would "let [him] know" if he should, and the executive director confirmed that El Deeb should attend the meeting.

At its next meeting, the MRC discussed El Deeb's request for reconsideration; El Deeb did not attend. After deliberation, the MRC voted and agreed to give El Deeb an opportunity to explain why the MRC should reconsider its decision to deny El Deeb's

3

2015 application. El Deeb's request was referred to the committee, and the MRC gave El Deeb notice of the committee meeting scheduled for July 2, 2015.

El Deeb appeared at the committee meeting, and the committee heard from the executive director and from El Deeb and his witnesses. The executive director summarized the proceedings that had occurred to date, including the MRC's order denying El Deeb's 2015 application. The executive director informed the committee that "the burden of proof is on [El Deeb], having once been denied a license, to overcome the presumption that he does not meet licensing requirements in Minnesota." El Deeb offered four exhibits and the testimony of several witnesses, including himself.

El Deeb's first witness was K.O., a veterinarian. K.O. testified that she goes to El Deeb's farms "a couple times a month" and that, on her most recent visit, she observed that the horses were "in good health" and that "[t]hey had good hay and water in front of them." K.O. stated that "[t]here were some things lacking" such as shavings in the stalls and overdue farrier work. K.O. acknowledged that the horses she most recently saw at El Deeb's farm were not race horses. K.O. was also asked about a written statement in which she had stated that El Deeb's "farms are both under-staffed and in desperate need of maintenance." K.O. tempered this statement by saying that the farms could use "general repair" and that "[an] extra person at each farm would be beneficial."

Several other witnesses testified favorably about El Deeb and his treatment of horses. C.B., a certified hunter-jumper trainer, testified that she has known El Deeb for approximately ten years and has trained and sold "dozens" of El Deeb's horses. C.B. has visited El Deeb's farms more than a dozen times per year and stated that she has never

4

seen a neglected horse on El Deeb's farms but agreed that his farms are in need of maintenance. At the time of the hearing, C.B.'s business relationship with El Deeb was no longer ongoing because she had closed her horse business. T.B. testified that he has known El Deeb for 20 years and has been to his farms several times. T.B. stated that he has never had trouble getting paid by El Deeb and that El Deeb's horses were "typically in good care." L.C., a Class C license holder, testified that he kept horses at El Deeb's farm ten years ago. L.C. did not observe any maltreatment and found El Deeb to be "very friendly and very respectable."

Another witness, F.M., testified concerning the report of animal neglect at issue in the denial of El Deeb's 2014 application. F.M. is a former employee of B.W. B.W. had received horses from El Deeb and had sent a written complaint to the MRC in 2014 with photos of the apparently maltreated horses. F.M. testified that he thought the horses looked "fine." F.M.'s testimony was consistent with his written submission in which he stated that one of the horses was "normal and healthy."

Two witnesses testified about the December 2014 barn fire. C.G., who worked and lived at the Buffalo farm with R.W., stated that on the night of the barn fire she was getting ready for bed and noticed the lights flickering in the house and heard a clicking sound. C.G. woke up R.W., and they noticed the flames as they walked outside to check a fuse box. R.W. ran toward the barn and told C.G. to call 911.

R.W. testified that he has worked at one of El Deeb's farms for five years and that he thought the fire was just "bad luck." The executive director read R.W. a statement he had previously given to the Wright County Sherriff's Office in which he stated that he

5

believed that the cause of the fire "was faulty, old wiring."[1] R.W. then stated that he still thought the fire started "at that breaker box area." R.W. also stated that when he first started working for El Deeb, he noticed that one breaker in the box made a "sharp sound" when it was turned on but that it "was shut off immediately and hadn't been touched." Additionally, R.W. stated that he and another individual built new stalls in the barn five to six months before the fire and moved some wiring without assistance from an electrician. Building permits were not obtained for the project and no inspections were conducted, aside from an unnamed electrician who looked at the wiring and stated that "it looked good to him."

El Deeb was the final witness. The committee asked El Deeb about his outstanding account with Prairie Farm Supply. El Deeb submitted five years of transaction history with Prairie Farm Supply and explained that the interest portion of the bill was "in dispute." El Deeb stated that he and Prairie Farm Supply's owner had agreed to settle the account for $14,000. With respect to the December 2014 fire, El Deeb stated that he was out of the country when it occurred and that he had no reason to start the fire because the barn and horses were uninsured. El Deeb explained that his insurance policy had been cancelled because he had too many horses on his farm and that his lender put force-placed coverage on the property until he secured a new policy. El Deeb also explained the workers' compensation issue and a criminal charge for insufficient animal

---

[1] The record also contains the fire investigation report and postfire photographs. The report concludes that the fire's cause could not be determined due to the level of destruction. The report and photos were considered by the MRC in its order denying El Deeb's 2015 license application and in its order denying El Deeb's request for reconsideration.

6

shelters that figured into the 2014 license denial, but the committee stopped El Deeb because "[t]hose matters have been adjudicated and they're in the past" and the focus needed to be on the "2015 license application and [the MRC's] action to deny and [El Deeb's] request to reconsider."

El Deeb expressed concern that he had not been allowed adequate time to discuss the past matters, and El Deeb was informed that he had until the end of the business day on July 13, 2015 to supplement the record. On July 13, El Deeb e-mailed a 12-page argument and exhibits 1A-41A to the MRC. On July 14, El Deeb sent additional documents to the MRC office via courier. The executive director notified El Deeb that the documents sent on July 14 were not the same as those that had been timely submitted on July 13 and that one of the MRC commissioners had stated that they should not be part of the record.

On August 20, the MRC issued an order denying El Deeb's request for reconsideration. The MRC found that El Deeb's witnesses were "in some instances, not credible and, in other instances, not persuasive in light of the record taken as a whole." The MRC discredited R.W.'s testimony that the December 2014 barn fire was "bad luck" and found K.O.'s written statement that El Deeb's farms are "under-staffed and in desperate need of maintenance" to be "more credible and consistent with the record" than her testimony that "the farms need general maintenance work." Furthermore, the MRC found that much of El Deeb's evidence "was not relevant or material" to his 2015 application. Finally, the MRC found that El Deeb's July 14 submissions were not part of the record and, in any event, the materials were not "relevant or material." The MRC

7

concluded that El Deeb failed to "carry his burden of proof" and denied his request for reconsideration.

This certiorari appeal follows.

## DECISION

We review an agency's decisions to determine whether the decision is (1) in violation of constitutional provisions, (2) in excess of the agency's statutory authority or jurisdiction, (3) the product of unlawful procedure, (4) affected by an error of law, (5) unsupported by substantial evidence in the record, or (6) arbitrary and capricious. Minn. Stat. § 14.69 (2014). We presume the correctness of an agency's decision and defer to an agency's conclusions in its area of expertise. *In re Review of 2005 Annual Automatic Adjustment of Charges for all Elec. & Gas Utils.*, 768 N.W.2d 112, 119 (Minn. 2009).

## I.

El Deeb first contends that the MRC's decision should be reversed because it is not supported by substantial evidence.

"The burden of proving that an agency's decision is not supported by substantial evidence is on the relator. If the commission engaged in reasoned decisionmaking, this court will affirm." *In re Class A License Appl. of N. Metro Harness, Inc.*, 711 N.W.2d 129, 137 (Minn. App. 2006) (citations omitted), *review denied* (Minn. June 20, 2006). Substantial evidence is "(1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; or (5) the evidence considered in its

8

entirety." *Minn. Ctr. for Envtl. Advocacy v. Minn. Pollution Control Agency*, 644 N.W.2d 457, 466 (Minn. 2002).

The MRC has the discretion to issue Class C licenses to applicants "qualified for the occupation for which licensing is sought and [who] will not adversely affect the public health, welfare, and safety or the integrity of racing in Minnesota." Minn. Stat. § 240.08, subd. 4 (Supp. 2015). Before issuing a license, the MRC is obligated to

> determine that the applicant's age, experience, reputation, competence, record of law abidance, and financial responsibility are consistent with the best interests of horse racing, the provisions of Minnesota Statutes, chapter 240, and that licensure will not adversely affect the public health, welfare, and safety within Minnesota.

Minn. R. 7877.0100, subp. 2 (2015).

In its order denying El Deeb's 2015 application, the MRC concluded that the evidence before it "overwhelmingly supports the conclusion that El Deeb does not meet [the] criteria for licensing." That decision was based on several concerns: (1) the problems highlighted in the denial of El Deeb's 2014 license application, (2) the December 2014 barn fire that resulted in the deaths of several race horses, (3) El Deeb's outstanding account with Prairie Farm Supply, and (4) the imposition of force-placed insurance coverage on El Deeb's property by his lender because El Deeb's previous policy had been cancelled. In its order denying El Deeb's request for reconsideration, the MRC determined that El Deeb did not present evidence to refute these concerns.

El Deeb contends that the MRC should not factor into its 2015 decision the reasons for the 2014 license denial. But that is what the MRC's rules require it to do:

9

> If an applicant for a Class C license has had a license denied or had his or her license suspended or revoked or been excluded by another racing jurisdiction, or has engaged in conduct that the [MRC] determines would adversely affect the public health, welfare, and safety or the integrity of racing in Minnesota, the [MRC] *shall* consider such fact as prima facie evidence that the applicant is unfit to be granted a Class C license, and the burden of proof shall rest upon the applicant to establish his or her fitness. In reviewing such applications, the [MRC] shall consider the factors provided in part 7877.0100, subpart 2.

Minn. R. 7877.0125, subp. 2 (emphasis added). The 2014 license denial was prima facie evidence of El Deeb's unfitness for licensure, and the MRC was obligated to consider that denial in its decision on 2015 licensure. *See id.*

El Deeb also argues that the decision to deny his 2015 application is not supported by substantial evidence because the individuals who testified against his 2014 license application did not testify in connection with his 2015 application, and because he presented F.M.'s testimony refuting B.W.'s 2014 complaint of animal maltreatment. But it was not the MRC's obligation to reestablish the basis of its 2014 order, which became prima facie evidence of El Deeb's unfitness; rather, El Deeb bore the burden of establishing his fitness for licensure. *See id.* And the MRC determined that much of El Deeb's evidence was irrelevant to accomplishing that task.

El Deeb also takes issue with the MRC's consideration of the force-placed insurance coverage as evidence of his lack of financial responsibility. While it is true that El Deeb did not lose his policy for financial reasons, his violation of the original policy's terms combined with his failure to timely secure new coverage, requiring his mortgage company to acquire force-placed insurance, demonstrates a lack of financial care and was

10

a relevant consideration in the calculus of El Deeb's fitness for licensure. *See* Minn. R. 7877.0100, subp. 2.

In his reply brief, El Deeb also contends that the MRC's consideration of the December 2014 barn fire was inappropriate because the fire investigation did not reveal the fire's cause. We disagree. The MRC has a duty to determine whether licensing an applicant is "consistent with the best interests of horse racing, the provisions of Minnesota Statutes, chapter 240, and that licensure will not adversely affect the public health, welfare, and safety within Minnesota." *Id.* The MRC considered that the fire resulted in the deaths of several horses and that this was the fourth fire El Deeb has had on his farms, and discredited R.W.'s testimony that the 2014 fire was "bad luck" due to his earlier statement to the police that the fire was likely caused by old wiring. The MRC did not impermissibly consider the December 2014 barn fire in its decision to deny El Deeb's 2015 license application. *See id*.

Given the 2014 license denial and the additional information considered by the MRC in its 2015 decision, we conclude that El Deeb has failed to establish that the MRC's decision is not supported by substantial evidence in the record. *See N. Metro Harness*, 711 N.W.2d at 137.

## II.

El Deeb also argues that the MRC's decision is arbitrary and capricious because the MRC considered an outstanding account without a written complaint from the creditor and because the MRC's decision is a product of its will and not its judgment.

*Financial responsibility*

El Deeb argues that the MRC's decision in its order denying his 2015 application is arbitrary and capricious because the MRC considered his outstanding account with Prairie Farm Supply as evidence of his lack of financial responsibility without a written complaint from Prairie Farm Supply.

We discern no arbitrary and capricious action in the MRC's consideration of El Deeb's outstanding account with Prairie Farm Supply. The MRC's rules provide for financial-responsibility complaints against a licensee and for subsequent investigations by the MRC's stewards. *See* Minn. R. 7897.0100, subp. 10 (2015) (requiring a written complaint from the licensee's creditors before an investigation). But the legislature also gave the MRC broad discretion to promulgate rules regarding any aspect of horse racing that "affects the integrity of racing or the public health, welfare, or safety." Minn. Stat. § 240.23(k) (Supp. 2015). One of the rules promulgated by the MRC establishes the criteria for licensure, and among those criteria is that the "applicant's . . . financial responsibility [is] consistent with the best interests of horse racing." Minn. R. 7877.0100, subp. 2. Accordingly, the MRC carried out its obligation to evaluate El Deeb's financial responsibility and found that he had an outstanding account of more than $38,000 with Prairie Farm Supply.

*Decision product of will and not of judgment*

El Deeb also contends that the MRC's decision is a product of its will and not its judgment. "An agency's decision is arbitrary and capricious when it represents the

12

agency's will and not its judgment . . . ." *Brinks, Inc. v. Minn. Pub. Util. Comm'n*, 355 N.W.2d 446, 452 (Minn. App. 1984).

El Deeb contends that the MRC's questioning of K.O. reflects the MRC's will to deny his Class C license application. K.O. testified that she manages to care for 20 horses despite working full time, but she submitted a written statement that El Deeb's farms are understaffed even though he has a full-time employee at each location. A committee member asked K.O., "So you have . . . 20 horses and you can maintain it. But in this particular situation, there is a full-time person at each place and that's not enough?" The question is not evidence of bias but of an attempt to clarify the apparent inconsistency between K.O.'s two statements.

In his reply brief, El Deeb contends that the MRC's decision is the product of its will because the MRC ignored favorable portions of his witnesses' testimony and credited other unfavorable portions. Determining credibility and weighing evidence are not indicia of willful or arbitrary decisionmaking but of the MRC performing its duties as the factfinder. *See Cannon v. Minneapolis Police Dep't*, 783 N.W.2d 182, 189 (Minn. App. 2010) (stating that "[w]e defer to [the factfinder's] conclusions regarding conflicts in testimony . . . and the inferences to be drawn from testimony" (quotation omitted)).

**III.**

El Deeb also argues that the MRC violated his rights to due process and equal protection.

13

## A.      Due Process

"Quasi-judicial proceedings do not invoke the full panoply of procedures required in regular judicial proceedings." *N. Metro Harness, Inc.*, 711 N.W.2d at 136. "The due-process rights required are simply reasonable notice of a hearing and a reasonable opportunity to be heard." *Id.*

El Deeb contends that he did not receive an adequate opportunity to be heard because the MRC prohibited him from addressing the issues highlighted in the 2014 license denial. El Deeb mischaracterizes the record. El Deeb's witnesses were allowed to, and almost exclusively did, talk about the past. And El Deeb's explanations of his prior behavior were not relevant to showing how he had remediated the concerns highlighted in the 2014 license denial. Moreover, the MRC gave El Deeb time to supplement the record. El Deeb timely submitted a written argument and a number of documents on July 13, 2015 that addressed matters underlying the 2014 license denial, and those documents were made part of the MRC's record on his 2015 license application. We conclude that El Deeb had ample opportunity to be heard.

El Deeb also contends that the MRC's investigation process violated his right to due process because the MRC's executive director and an MRC member participated in both the 2014 and 2015 license decisions. El Deeb cites two e-mails from September 2014 establishing that at least two of the people who participated in the decision on his 2014 application also participated in the decision on his 2015 application. The fact that the MRC's executive director and an MRC member participated in El Deeb's 2014 and 2015 license applications is not evidence of a due-process violation. *See id.* As the MRC

14

argues, "It would be an absurd result if the commission, once it decides to deny a license application, might never again have any input regarding that applicant." We conclude that El Deeb has not established that the MRC violated his right to due process.

**B.      Equal Protection**

El Deeb raises several arguments, without supporting legal citation, that he was denied his right to equal protection.

The Equal Protection Clauses of the United States and Minnesota Constitutions require that similarly situated individuals be treated alike. *State v. Richmond*, 730 N.W.2d 62, 71 (Minn. App. 2007), *review denied* (Minn. June 19, 2007). The "threshold question" in an equal-protection claim "is whether the claimant is treated differently from others who are similarly situated." *Odunlade v. City of Minneapolis*, 823 N.W.2d 638, 647 (Minn. 2012). "[W]e routinely reject equal-protection claims when a party cannot establish that he or she is similarly situated to those whom they contend are being treated differently." *Id.* (quotation omitted).

El Deeb makes several allegations in support of his claim that the MRC violated his right to equal protection: (1) the MRC's investigation into his outstanding debt with Prairie Farm Supply unfairly targeted El Deeb, (2) the MRC did not adequately consider the fact that he settled his account with Prairie Farm Supply, (3) the MRC erroneously considered the cancellation of his property insurance as evidence of his lack of financial responsibility, (4) the MRC referred his case to Scott County for criminal prosecution, (5) an e-mail from an MRC commissioner supporting the denial of El Deeb's 2015 license application "omits the shenanigans [the MRC] is perpetrating on [El Deeb] by

15

selecting [him] out for punishment," and (6) the MRC does not routinely inspect other applications to determine if they contain false statements.[2]

We find no merit to El Deeb's equal-protection arguments. El Deeb makes many allegations that he was treated differently than other Class C license applicants, but El Deeb has failed to establish that he was treated differently than similarly-situated individuals. El Deeb came to the 2015 application process not as a new, unblemished applicant, but as an applicant who was presumed to be unfit for licensure based on the problems highlighted in the 2014 license denial. *See* Minn. R. 7877.0125, subp. 2. The MRC was not obligated to treat El Deeb the same as a new applicant; rather, the MRC conducted an appropriate investigation given El Deeb's licensing history. *See* Minn. Stat. § 240.08, subd. 3 (2014) (stating that the MRC "shall investigate each applicant for a class C license to the extent it deems necessary"). Consequently, El Deeb's equal-protection argument fails. *See Odunlade*, 823 N.W.2d at 647.[3]

---

[2] El Deeb also cites to extra-record material to support his equal-protection arguments and moved to supplement the record on appeal. We denied that motion and do not consider those materials in our discussion here.

[3] Additionally, El Deeb argues that we should transfer his case to a district court to further develop the record and cites to *Hard Times Cafe, Inc. v. City of Minneapolis*, 625 N.W.2d 165 (Minn. App. 2001). In *Hard Times Cafe*, the relator challenged the denied renewal of a license by the Minneapolis City Council after a contested-case hearing in front of an administrative-law judge. 625 N.W.2d at 169-71. We transferred the case to a district court, as is authorized under the Minnesota Administrative Procedure Act, because of alleged procedural irregularities in the city council's decision and because the record was insufficient to review the alleged irregularities. *Id.* at 174-75; *see* Minn. Stat. § 14.68 (2014) ("[I]n cases of alleged irregularities in procedure, not shown in the record, the [c]ourt of [a]ppeals may transfer the case to the district court for the county in which the agency has its principal office or the county in which the contested case hearing was held."). Even if the MRC's consideration of and hearing on El Deeb's 2015 application

**IV.**

El Deeb also contends that the MRC was statutorily prohibited from considering the criminal charges against him for making false statements on his prior applications.

El Deeb suggests that the requirement that a Class C applicant submit an affidavit confirming that the applicant has not been "found guilty of fraud or misrepresentation in connection with racing or breeding," Minn. Stat. § 240.08, subd. 2(a)(4) (Supp. 2015), means that the MRC could not consider that El Deeb is facing charges stemming from false statements on his prior applications. We disagree. The MRC may broadly consider anything relevant to an applicant's "reputation" and "record of law abidance," which presumably includes criminal charges for lying on prior license applications. *See* Minn. R. 7877.0100, subp. 2. And, in any event, neither the order denying El Deeb's 2015 application nor the order denying his request for reconsideration contains a finding regarding criminal charges for false statements on El Deeb's prior applications. El Deeb's argument fails.

**V.**

Finally, we address the MRC's motion to strike three portions of El Deeb's reply brief: (1) El Deeb's reference to the financial value of the horses killed in the December 2014 barn fire, (2) El Deeb's allegation that the MRC has never reviewed an applicant's

---

constituted a contested case, El Deeb has not established that the MRC's record is insufficient to review any alleged procedural irregularities, and we therefore decline El Deeb's request to transfer the case to a district court. *See Hard Times Cafe*, 625 N.W.2d at 174-75.

financial responsibility to the extent it did with him, and (3) El Deeb's reference to a 2007 study regarding his contributions to Minnesota's horse racing industry.

Each statement of a material fact in an appellate brief "shall be accompanied by a reference to the record." Minn. R. Civ. App. P. 128.02, subd. 1(c). "Appellate courts may not consider matters outside the record on appeal and will strike references to such matters from the parties' briefs." *Stageberg v. Stageberg*, 695 N.W.2d 609, 613 (Minn. App. 2005), *review denied* (Minn. July 19, 2005). We may deny a motion to strike as moot, however, if we do not rely on the challenged material to reach our decision. *Drewitz v. Motorwerks, Inc.*, 728 N.W.2d 231, 233 n.2 (Minn. 2007).

Although the cited portions of El Deeb's reply brief fail to cite supporting materials in the record, we need not rely on them to reach our decision. Neither the value of the horses that died in the barn fire nor El Deeb's alleged historical contributions to Minnesota horse racing is relevant to our analysis of the MRC's decision to deny El Deeb's 2015 Class C license application. El Deeb's allegation regarding the MRC's review of his financial responsibility merely restates one of El Deeb's unsubstantiated claims in his primary brief. Because we need not rely on these portions of El Deeb's reply brief, we deny the MRC's motion to strike as moot. *See id*.

**Affirmed; motion denied.**

18